**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL CARUSO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20 CV 581 SPM |
| ) | |
| ST. LOUIS, MISSOURI, CITY OF, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant City of St. Louis's ("Defendant's") Motion to Dismiss. (Doc. 5.) Plaintiff Michael Caruso brought this action alleging that the termination of his employment as a police officer by Defendant upon his turning 65 violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (Count 1), and constituted retaliation in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.* (Count 2). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss.

**I.      Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The Court must accept a plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## II. Factual and Procedural Background

The facts, as alleged in the First Amended Complaint, are as follows: Plaintiff Michael Caruso was employed by Defendant as a police officer with the Metropolitan Police Department, City of St. Louis ("Department"). He began his employment with the Department on December 20, 1976. He was promoted to the rank of major in January 2013 and was subsequently promoted to Lieutenant Colonel. On August 17, 2016, Plaintiff filed a lawsuit against Defendant alleging discrimination based on his gender and race (hereinafter "2016 Discrimination Lawsuit"). The Discrimination Lawsuit settled on or before August 6, 2017.

Plaintiff turned 65 on June 30, 2019. Defendant had the ability to extend Plaintiff's employment even after he turned 65. As such, in the months leading up to his birthday, Plaintiff submitted multiple requests to Defendant for his employment to be extended beyond his 65th birthday. His requests went unanswered until June 28, 2019, when he was called into a meeting

with the chief of police and told his request was denied and that he was "out of here." The Director of Public Safety for Defendant made disparaging comments about Plaintiff's age, said Plaintiff needed to go, and that the Director needed to move some of the younger guys up. On June 29, 2019, Plaintiff was notified that his employment would end at 5:00 p.m. that day.

Plaintiff alleges he was fired due to his age and in retaliation for filing the 2016 Discrimination Lawsuit against Defendant. Other employees of Defendant requested that their employment be extended beyond their 65th birthdays, and Defendant granted their requests and either did not terminate those employees or gave the other employees different positions within the City of St. Louis.

On April 27, 2020, Plaintiff filed this action alleging Defendant's termination of his employment violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., and constituted retaliation in violation of Title VII, 42 U.S.C. § 2000(e) *et seq*. Defendant moved to dismiss the complaint in its entirety for failure to state a claim. During the Rule 16 scheduling conference, the Court gave Plaintiff leave to file an amended complaint prior to ruling on Defendant's motion. Plaintiff then filed his First Amended Complaint, incorporating additional allegations to support his two causes of action. (Doc. 17.) In response, Defendant filed a Supplemental Memorandum in Support of the Motion to Dismiss, arguing the First Amended Complaint does not cure the defects in Plaintiff's original Complaint. The Court has considered the parties' briefing related to the original Complaint and the First Amended Complaint in determining whether the First Amended Complaint should be dismissed for failure to state a claim. (Docs. 5, 6, 10, 11, 18, 19).

3

### III.   DISCUSSION

#### A.   COUNT I: AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

In Count I, Plaintiff alleges Defendant violated the ADEA.  The ADEA makes it unlawful to discharge an individual because of his age and, as Plaintiff has asserted, the Amended Complaint sets out (albeit in summary terms) the elements of a claim for age discrimination. *See* 29 U.S.C. § 623(a)(1); *Grant v. City of Blytheville, Ark.,* 841 F.3d 767, 773 (8th Cir. 2016) (holding that to state a claim for discriminatory treatment based on age, the discharged employee is required to prove: (1) the employee was a member of a protected age group; (2) the employee met the employer's legitimate expectations; (3) the employee suffered an adverse employment action; and (4) there are circumstances that give rise to an inference of discrimination based on age).

Defendant concedes Plaintiff was terminated because of his age but argues Plaintiff's discharge fell within an exemption in the ADEA that allows state and local governments to set a mandatory retirement age for police officers provided certain requirements are met. Specifically, under 29 U.S.C.§ 623(j), state and local governments are allowed to set mandatory retirement ages for firefighters and law enforcement officers if the following two requirements are met: First, the discharge must have been pursuant to a state or local law requiring mandatory retirement by a certain age; and, second, the discharge must be pursuant to a bona fide retirement plan that is not a subterfuge for impermissible age discrimination. 29 U.S.C. § 623(j)(1)-(2).[1] To satisfy the first

---

[1] The full text of 29 U.S.C. § 623(j) is as follows:
**(j) Employment as firefighter or law enforcement officer**
It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken--
   (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained--
      (A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or

requirement, the mandatory retirement law must *either* have been in effect on March 3, 1983 *or* must have been enacted after September 30, 1996; and, if the latter, the discharge must occur no earlier than age fifty-five. *See Correa-Ruiz v. Fortuno,* 572 F.3d 1, 9 (1st Cir. 2009) (construing 29 U.S.C. §623(j)(1)(A) and (B)(ii) to mean the discharge must have been "pursuant to a mandatory retirement plan that *either* was in effect on March 3, 1983 *or* was enacted after September 30, 1996. The only-age related limitation on the latter option is that the discharge occurs no earlier than age fifty-five.").

    1. **PLAINTIFF WAS DISCHARGED PURSUANT TO A MANDATORY RETIREMENT LAW THAT MET THE REQUIREMENTS OF §623(J)(1).**

In this case, the First Amended Complaint alleges that, at the time he was terminated, Plaintiff was a police officer in the City of St. Louis and had been a St. Louis City Police Officer since 1976. Pursuant to Mo. Rev. Stat. §86.207, all police officers in the City of St. Louis must become members of the Police Retirement System of St. Louis ("PRS") as a condition of their employment with the police division. A Missouri statute enacted in 1979, Mo. Rev. Stat. § 86.250(2), provided that "[a]ny [PRS] member in service who has attained the age of sixty-five *shall be retired forthwith*...." Mo. Rev. Stat. §86.250(2) (emphasis added). The statute was later amended in 2015 to mandate that "[a]ny [PRS] member in service who has attained the age of sixty-five ***shall be <u>terminated as a police officer and</u> retired forthwith***...."[2] *Id.* (emphasis added).

---

      (B)(i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or
      (ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of--
          (I) the age of retirement in effect on the date of such discharge under such law; and
          (II) age 55; and
  (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.
[2] The full text of section 86.250(2) states:
Retirement of a member on a service retirement allowance shall be made by the board of trustees as follows:
    (1) \*\*\*
    (2) Any member in service who has attained the age of sixty-five shall be terminated as a police officer and actually retired forthwith provided that upon request of the chief of police the board of trustees may permit

Taking as true the well-pleaded facts in Plaintiff's First Amended Complaint and all reasonable inferences therefrom, it is clear that Plaintiff, a long-serving police officer in the City of St. Louis, was subject to Defendant's mandatory retirement plan set out in Mo. Rev. Stat. §86.250(2), which was enacted in 1979. However, Plaintiff contends Mo. Rev. Stat. §86.250 does not satisfy the ADEA's requirement that a mandatory retirement plan must have been in effect as of March 3, 1983. This is so, Plaintiff posits, because in March of 1983 Mo. Rev. Stat. §86.250(2) did not require that any member who attained the age of sixty-five be "terminated as a police officer." This argument fails for two reasons.

First, the ADEA's exemption under §623(j) applies when the individual has attained the mandatory age of retirement under applicable state law, provided the law was in effect on March 3, 1983. 29 U.S.C. §623(j)(1)(A). As Plaintiff correctly notes, the statute in effect on March 3, 1983, did not require that a member who reached the age of 65 be "*terminated as a police officer.*" However, both the law in effect in March 1983 and the subsequent amendment in 2015 establish a mandatory retirement age by requiring that members who reach the age of 65 "*be retired forthwith.*" The additional requirement that members who reach age 65 be "terminated as a police officer" did not change the mandatory retirement age. For purposes of the instant motion, the fact that the law in effect on March 3, 1983 did not include the words "terminated as a police officer" distinguishes it from the 2015 amendment but makes no difference to the analysis under §623(j).

Plaintiff's argument also ignores the alternative basis for an exemption offered in §623(j)(1)(B)(ii). Under §623(j)(1)(B)(ii), states or their subdivisions may discharge a law enforcement officer pursuant to a mandatory retirement plan enacted after September 30, 1996, so long as the discharge occurs no earlier than age fifty-five. 29 U.S.C. § 623(j)(1)(B)(ii). *See*

---

such member to remain in service for periods of not to exceed one year from the date of the last request from the chief of police.

6

*Fortuno,* 572 F.3d at 9 (noting that, by its terms, §623(j) is satisfied if discharge was pursuant to a mandatory retirement plan that *either* was in effect on March 3, 1983 *or* was enacted after September 30, 1996, so long as the discharge otherwise complies with §623(j)). Here, the current version of Mo. Rev. Stat. § 86.250(2) was enacted in 2015. As amended, §86.250(2) requires both retirement and termination of a police officer who attains age 65.

Plaintiff also contends that neither the ADEA exemption in § 623(j) nor Mo. Rev. Stat. § 86.250 are applicable to justify his termination because he was terminated before he turned 65. However, Plaintiff's First Amended Complaint alleges that he was notified that his employment would end at 5:00 pm on the day before he turned 65. This means Plaintiff's employment continued until close of business on his last day at age 64, and on his first day at age 65, he was in mandatory retirement. Because Plaintiff's employment ended and retirement began when he reached age 65, Defendant's conduct is in conformance with the requirement in Mo. Rev. Stat. §86.250(2) that PRS members who attain the age of 65 "be retired forthwith."[3]

For all of the foregoing reasons, notwithstanding Plaintiff's arguments to the contrary, the facts alleged in the First Amended Complaint together with Missouri law support Defendant's argument that Plaintiff was discharged pursuant to a mandatory retirement law for police officers that met the requirements of the ADEA exemption in §623(j)(1).

---

[3] Plaintiff briefly argues that even if RSMo § 86.250(2) allowed for mandatory retirement at age 65, it could not apply to police officers employed by the City of St. Louis, because the City of St. Louis did not control the Department in 1983. In 1983, the Department was governed by a Board of Police Commissioners, and the City of St. Louis did not assume control of the Department until September 2013. *See* RSMo § 84.344 (any city not within a county may establish a municipal police force on or after July 1, 2013). Plaintiff once again ignores the ADEA exemption's statutory criteria. The ADEA's exemption under § 623(j) requires the mandatory retirement provision was *either* was in effect on March 3, 1983 *or* was enacted after September 30, 1996, and that it meets the aforementioned age limitations. Nothing in the language of the provision even suggests that a change in control of the Department after 1983 renders section 623(j) in applicable. Further, as Defendant points out, Missouri law specifically provides that the transition from state to local control does not limit or change the rights or benefits provided in the police pension system under chapter 86. *See* RSMo § 84.346. Thus, Plaintiff's argument is without merit.

**2. THE FIRST AMENDED COMPLAINT NEITHER ALLEGES NOR OTHERWISE CONTAINS FACTS THAT PLAUSIBLY DEMONSTRATE THAT THE MANDATORY RETIREMENT LAW FOR POLICE OFFICERS WAS SUBTERFUGE FOR AGE DISCRIMINATION.**

The First Amended Complaint contains no facts that plausibly show the mandatory retirement law for St. Louis City police officers was subterfuge for age discrimination. The closest Plaintiff comes to making such an assertion is Plaintiff's allegation and argument that the chief of police could exercise discretion in making exceptions to mandatory retirement under § 86.250(2); but declined to do so for Plaintiff. Plaintiff contends that this refusal, combined with "disparaging comments" made by the director of public safety, establish Plaintiff's termination was solely because of his age. In other words, Defendant had the option to allow Plaintiff to remain employed, but because it wanted younger employees to fill his role, it chose not to extend Plaintiff's employment, discriminating against him because of his age.

In ADEA claims based on a mandatory retirement age, courts consistently reject this argument, finding that the defendant's "motives are irrelevant" because "a forced retirement system is precisely what the ADEA allows." *Sadie v. City of Cleveland*, No. 1:10 CV 822, 2012 WL 10520, at *5 (N.D. Ohio Jan. 3, 2012), *aff'd,* 718 F.3d 596 (6th Cir. 2013) ("Plaintiffs point out that prior to 2010 the custom within the police department was to grant every officer's request. But Plaintiffs fail to show why that matters for purposes of an ADEA claim."); *see also Knight v. State of Ga.*, 992 F.2d 1541, 1547 (11th Cir. 1993) (amendment to Georgia's state trooper retirement law expanding the Director of the Department of Public Safety's discretion to waive the mandatory retirement rule did not render the mandatory retirement law in violation of the ADEA); *Correa–Ruiz v. Fortuno,* 573 F.3d 1, 13 (1st Cir.2009) ("Using age as a basis for requiring retirement is precisely what section 623(j)(2) entitles the Commonwealth to do...."); *Feldman v. Nassau Cnty.,* 434 F.3d 177, 184 (2d Cir. 2006) ("[d]espite plaintiff's contention to the contrary, showing that [New York's civil service statute] discriminates on the basis of age rather than ability

8

cannot be enough to make section [623(j)] inapplicable."); *Minch v. City of Chicago,* 363 F.3d 615, 629 (7th Cir.2004) ("The ADEA does not forbid Chicago from making age-based retirement decisions as to its police and fire personnel....").

For the foregoing reasons, Count I must be dismissed because Plaintiff has failed to allege facts that plausibly show the defendant is liable for violating the ADEA.

### B.  COUNT II: TITLE VII RETALIATION

Title VII, 42 U.S.C. § 2000e-3 prohibits retaliation against employees who report workplace discrimination. A retaliation claim has the following prima facie elements: (1) the employee engaged in protected activity, (2) the employee suffered an adverse employment action, and (3) a causal connection exists between the adverse employment action and the protected activity. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003).

In Count II, Plaintiff alleges his termination on the day before his 65th birthday was retaliation for filing a prior lawsuit against Defendant for discrimination based on Plaintiff's gender and race. Plaintiff engaged in a protected activity by filing the Discrimination Lawsuit against Defendant, and Plaintiff's termination constitutes an adverse employment action, meeting the first two elements of a retaliation claim. The parties' dispute lies in the third element, whether a causal connection exists between Plaintiff's termination and the Discrimination Lawsuit.

To adequately plead a causal connection, a plaintiff must allege but-for causation. *Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). A plaintiff "must thus show that her conduct was a 'determinative-not merely motivating—factor' in the [employer's] actions." *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (quoting *Tyler v. Univ. of Ark. Bd. of Trs.,* 628 F.3d 980, 985 (8th Cir. 2011)). "[A]n inference of causation may be established through indirect evidence, such as the closeness in time between the protected and adverse

actions." *Id.* However, the more time that elapses between the two events, the weaker the inference of causation. *Id.* "Any inference of causation evaporates if the adverse action occurs months after the protected activity." *Id.* "In such cases, a plaintiff must present additional evidence of a causal link, which can include escalating adverse and retaliatory action." *Id.; see also Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 739 (8th Cir. 2013) (Timing alone is usually insufficient to establish that the employer's legitimate non-discriminatory reason for discharge is pretext).

The Court finds that Plaintiff has failed to plausibly allege but-for causation. His allegation that "Plaintiff was fired in retaliation for filing the Discrimination Lawsuit against the City" is a conclusion without support from any factual allegations. The allegations show that Plaintiff was terminated more than 58 months after he filed his Discrimination Lawsuit. Any potential inference of causation based on temporal proximity "evaporates" after such a large lapse in time between the protected activity and adverse action. *See, e.g., Robinson,* 753 F.3d at 756 (rejecting assertion that six months of elapsed time establishes causation); *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 886 (8th Cir. 2015) (discharge of plaintiff three months after her complaint is insufficient to prove causation); *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) ("time interval of more than two months is too long to support an inference of causation").

Plaintiff amended his Complaint to add new allegations that, upon information and belief, other similarly situated employees requested their employment be extended beyond their 65th birthdays, and that Defendant granted extension requests for similarly situated employees who had not sued Defendant. These allegations are also insufficient to establish a causal connection. *See, e.g., Davis v. Johnson*, 2017 WL 157784, at *2 (E.D. Ark. Jan. 10, 2017), *judgment entered sub nom. Davis v. Jefferson Reg'l Med. Ctr. Preferred Provider Org.*, 2017 WL 157785 (E.D. Ark. Jan. 10, 2017) ("While the bar for considering alleged comparators at the pleading stage must be

low, Dr. Davis hasn't cleared it with his allegations about Dr. Dharamsey's and Dr. Boast's deficiencies."). Plaintiff has not identified the similarly situated employees, nor has he alleged how they are similarly situated.[4] Plaintiff does not allege whether the similarly situated employees held the same position or job title as Plaintiff, let alone whether they dealt with the same supervisor. Such conclusory allegations, unsupported by additional factual allegations, do not suffice to state a claim.

Plaintiff argues that his burden at the motion to dismiss stage in a discrimination-based suit is not onerous, and this is not an issue to be decided on the pleadings. *See Wilson,* 850 F.3d at 372 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). However, the Eighth Circuit has held that "elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit." *Blomker v. Jewell,* 831 F.3d 1051, 1056 (8th Cir. 2016). "A plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right." *Id.* "While a plaintiff need not set forth detailed factual allegations, ... *the complaint must include sufficient factual allegations to provide the grounds on which the claim rests*." *Id.* (emphasis in original) (citations omitted).[5]

---

[4] "The test for whether employees are similarly situated 'is rigorous and requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees.'" *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir.2012) (alteration omitted) (quoting *Fields v. Shelter Mut. Ins. Co*., 520 F.3d 859, 864 (8th Cir.2008)). "'The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and [have] engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id.* (alteration in original) (quoting *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1043 (8th Cir.2007)).

[5] Indeed, the Eighth Circuit and its district courts dismiss retaliation claims where the plaintiff fails to plausibly allege the retaliation was a 'but-for' cause of the defendant's adverse action. *See, e.g., Blomker*, 831 F.3d at 1059 (affirming dismissal); *Bad Wound v. Zinke*, 2019 WL 1060819, at *3 (D. Minn. Mar. 6, 2019) (granting motion to dismiss because allegation of termination four months after plaintiff reported discrimination was insufficient to allege a plausible link to any protected activity); *Warmington v. Bd. of Regents of Univ. of Minnesota*, 455 F. Supp. 3d 871, 887 (D. Minn. 2020) (plaintiff's allegations "do not plausibly show the but-for causal connection essential to Warmington's Title IX retaliation claim"); *Gage v. Brennan*, No. 4:17-CV-2872 CAS, 2018 WL 3105418, at *7 (E.D. Mo. June 25,

Plaintiff has not met this threshold. In fact, his First Amended Complaint makes clear that Plaintiff's attainment of the mandatory retirement age was, at the very least, a motivating factor for his termination. (Doc. 17 at ¶¶ 10, 16-18.) Defendant's mandatory retirement age is 65, and in the months leading up to his 65th birthday, Plaintiff submitted multiple requests to extend his employment beyond age 65, indicating that he anticipated the upcoming termination due to his age. The allegations that the Director of Public Safety "made disparaging comments about Plaintiff's age, said Plaintiff needed to go, and the Director needed to be moving some of the younger guys up" further support that Plaintiff's age was the reason for his termination, not the lawsuit he filed years ago. The allegations simply do not support that the Discrimination Lawsuit was the but-for cause of Defendant terminating Plaintiff on the eve of his 65th birthday. *See Blomker,* 831 F.3d at 1059 ("It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."). Because Plaintiff has not alleged a plausible causal connection between his Discrimination Lawsuit and his termination, Plaintiff fails to state a claim for retaliation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss (Doc. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint (Doc. 17) is **DISMISSED WITH PREJUDICE**.

Dated: November 16, 2020.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

---

2018), *motion for relief from judgment denied*, No. 4:17-CV-2872 CAS, 2018 WL 4777302 (E.D. Mo. Oct. 3, 2018) (dismissing claim where factual allegations could not support an inference that plaintiff's unspecified EEO activity was the but-for cause of adverse employment actions).